UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLINTON FRAZIER,

                Plaintiffs,

v.

MICHAEL REYES, et al.,

                Defendants.

Case No. 2:20-cv-10290

HONORABLE STEPHEN J. MURPHY, III

_____/

**OPINION AND ORDER
GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT [44]**

Plaintiff Clinton Frazier filed an amended complaint under 42 U.S.C. § 1983 that alleged three Detroit Police Department officers—Michael Reyes, Christopher Bush, and Timothy Roux—used excessive force to detain him in violation of the Fourth Amendment. ECF 25. The officers moved for summary judgment. ECF 44. Officer Reyes argued that he is entitled to qualified immunity. *Id.* at 927–32. Corporal Bush and Officer Roux also argued that they were entitled to qualified immunity, but on the ground that they were not personally involved in the conduct that allegedly constituted excessive force. *Id.* at 919–23. The Court will grant qualified immunity to Corporal Bush and Officer Roux, but not Officer Reyes.[1]

---

[1] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* Fed R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

## BACKGROUND

The lawsuit revolves around an incident that took place on the night of November 2, 2019. ECF 25, PgID 146. The record demonstrates that the parties have conflicting recollections of the night's events. Because the differences create genuine disputes of material fact, the Court will first recount the facts as reported by the officers and then the facts as remembered by Plaintiff. Before turning to the governing law, the Court will also discuss a cell phone video of the incident taken by a non-party witness—the only extant recording of what happened.

I. <u>The Officers' Recollection</u>

By November 2, 2019, Officer Reyes had been a police officer in Detroit for just under three years, ECF 44-4, PgID 940, and Officer Roux had been a police officer there for just over a year, ECF 44-5, PgID 998. Neither officer had worked in law enforcement before their time with the Detroit Police Department. ECF 44-4, PgID 940; ECF 44-5, PgID 998. Both officers were assigned to the Eighth Precinct, but Officer Reyes was with the Special Operations Unit while Officer Roux was finishing his probationary period of training in patrol. ECF 44-4, PgID 942; ECF 44-5, PgID 999–1000.

The night of the incident, Officer Roux was assigned to ride with a corporal in the Eighth Precinct, Christopher Bush.[2] ECF 44-5, PgID 1000. Officer Reyes joined the pair to form a three-officer team. ECF 44-4, PgID 946; ECF 44-5, PgID 1000.

---

[2] The parties did not attach a transcript of Corporal Bush's deposition, and there is no information in the record about Corporal Bush besides what Officers Reyes and Roux discussed in their depositions.

Rather than riding in a general patrol car, all three officers were in the same special operations vehicle—a semi-marked police car. ECF 44-5, PgID 1000–01. Corporal Bush was the driver, Officer Reyes was in the front passenger seat, and Officer Roux sat behind Corporal Bush. ECF 44-5, PgID 1005.

Defendants were parked next to a liquor store near the intersection of Wormer and McNichols Road. *Id.* at 1006. A car pulled up directly in front of them. *Id.* A woman came out of the store, spoke to the driver of the car, noticed the officers, and walked back into the store. *Id.* Officer Roux claimed that the driver had noticed the officers as well and immediately turned to leave the area. *Id.* Officer Reyes ran the car's license plate through the Law Enforcement Information Network ("LEIN") system. ECF 44-4, PgID 948. The search revealed that the car was unregistered and uninsured. *Id.*

Corporal Bush tried to initiate a traffic stop by turning on the police car's lights. ECF 44-5, PgID 1009. The car did not stop, and instead continued on Telegraph Road. ECF 44-4, PgID 948; ECF 44-5, PgID 1009. Even though the car did not stop, Officer Reyes did not believe the driver was attempting to flee because the car maintained a steady speed and did not attempt any evasive maneuvers. ECF 44-4, PgID 948.

According to Officer Roux, at one point Corporal Bush pulled up next to the car at a stop light, rolled down his window, and spoke with the driver. ECF 44-5, PgID 1010. The driver yelled to Corporal Bush that he had done nothing wrong and was

3

just driving home to an apartment complex across the street. *Id.* The driver did so, and the officers followed. *Id.* at 1010–11.

Once both cars were in the parking lot of the apartment complex, the officers told the driver to exit the car, and, even though the car was still moving, the driver got out and began to walk away. ECF 44-4, PgID 948–49; ECF 44-5, PgID 1011. According to Officer Reyes, but not Officer Roux, the driver then walked back to his car, stuck his upper torso into the driver's side door, removed himself fully from the car, and began to "briskly" walk away again. ECF 44-4, PgID 949, 956–58; ECF 44-5, PgID 1011–12. Officer Reyes sprinted toward the driver to detain him. ECF 44-4, PgID 949; ECF 44-5, PgID 1012. According to Officer Reyes, the driver resisted. ECF 44-4, PgID 949. Officer Reyes then took the driver to the ground. *Id.*; ECF 44-5, PgID 1013.

Both Officer Reyes and Officer Roux testified that when the driver hit the ground, the driver's hands were underneath him, possibly tucked away into the front pocket of a hoodie sweatshirt. ECF 44-4, PgID 949, 959; ECF 44-5, PgID 1013–14. The officers' expert would later describe the position the officers stated the driver was in as a "turtling" position. ECF 44-8, PgID 1093 n.14.[3] Still, the officers testified that within seconds: (1) Reyes was kneeling on top of the driver; (2) Roux was kneeling to the left with one hand on the back of the driver's shoulder and the other on the driver's elbow; and (3) Bush was kneeling on the opposite side trying to do the same.

---

[3] Based on the officers' testimony, perhaps the best way to describe a "turtling" position is to imagine a tyrannosaurus rex lying prone with its arms stuck squished underneath its torso.

4

ECF 44-4, PgID 949; ECF 44-5, PgID 1013–15. The officers claimed that they could not gain full control of the driver's arms to put him in handcuffs because the driver continued to resist. ECF 44-4, PgID 949; ECF 44-5, PgID 1013–15.

To gain full control, Officer Reyes conducted three to four open palm strikes that drove the driver's head into the parking lot pavement. ECF 44-4, PgID 949, 961. The strikes caused the driver to stop resisting, and the officers managed to gain control and put him in handcuffs. *Id.*; ECF 44-5, PgID 1016. The officers thought that the driver was intoxicated, and a later search revealed that the driver had two pairs of brass knuckles in his pockets. ECF 44-4, PgID 961–62; ECF 44-5, PgID 1017. The officers believed that they could arrest the driver, who they learned was Plaintiff Clinton Frazier, for carrying the brass knuckles as a concealed weapon, driving without a license, driving without insurance, resisting arrest, and driving while intoxicated. ECF 44-4, PgID 965; ECF 44-5, PgID 1024–25.

But given the use of force, the officers had to call in their supervisor, Sergeant Lewis.[4] ECF 44-5, PgID 1023–24. The officers explained the incident to Sergeant Lewis, who then talked to Plaintiff. ECF 44-5, PgID 1024. After the discussions, Sergeant Lewis instructed the officers to cut Plaintiff a break by writing him tickets rather than arresting him. ECF 44-4, PgID 964; ECF 44-5, PgID 1024.

Detroit Police Department policy required the officers to write a formal report in light of the force used against Plaintiff. ECF 44-4, PgID 969–70. But the officers

---

[4] The parties did not attach a transcript of a deposition of Sergeant Lewis, and there is no information in the record about Sergeant Lewis besides what Officers Reyes and Roux discussed in their depositions.

5

failed to do so. *Id.* Officer Reyes claimed that Sergeant Lewis stated something to the effect of "we don't need to go further," which Officer Reyes took as an instruction to not write a report. *Id.* at 979, 981–82. Officer Roux claimed that there would have to be an arrest for the officers to write a use of force report, which is why they did not complete one. ECF 44-5, PgID 1037. But Officer Reyes admitted that even though Sergeant Lewis did not instruct them to write a use of force report, the officers still had a duty to write a report under the standing Detroit Police Department policy. ECF 44-4, PgID 982.

Officer Reyes testified that he activated his body camera before making physical contact with Plaintiff and that the police car's dashboard camera was activated during their pursuit of Plaintiff. ECF 44-4, PgID 967–969.[5]

II. Plaintiff's Recollection

Plaintiff detailed cars at a car finance shop. ECF 44-6, PgID 1052. A few days before the incident, the shop offered him a good deal on a trade-in for a used car. *Id.* at 1053. Although he had just registered the vehicle, he had not yet obtained insurance. *Id.*

On the day of the incident, he used the car to drive to and from work, visit his mother at a hospital, and pick up takeout food for dinner. *Id.* at 1053–54. He dropped

---

[5] While the record is unclear, the Court has inferred that the body camera and dash camera videos are not part of the record because the videos were not preserved since the officers neither made an arrest nor filed a use of force report as required under the standing Department policy. *See generally* ECF 44-4; 44-5. Their conduct and assertions are thus not independently verifiable as a result of their own failure to follow the policy.

6

the food off at his apartment, but before he sat down to eat, he decided he wanted beverages and snacks to go with the takeout. *Id.* at 1054. He drove to a nearby liquor store, went inside, and bought liquor, juice, and snacks. *Id.*

Plaintiff then left the liquor store to drive home. *Id.* at 1055. He noticed a car pull up beside him and worried someone was about to stick him up given the car's suspicious behavior. *Id.* He kept driving, but a short while later the car pulled behind him and lights started flashing. *Id.* He realized the car that had pulled up beside him had actually been a police car. *Id.* Plaintiff became nervous and did not want to stop along the road. *Id.* He believed the safest way to proceed would be to take the police back to his apartment. *Id.*

Once Plaintiff pulled into the parking lot of his apartment complex, he parked the car and exited with his hands in the air. *Id.* at 1056. He claimed the officers pointed their guns at him while he continued to stand with his hands in the air for nearly a minute. *Id.* at 1057. One officer then ran toward him and tackled him to the ground "like a football player." *Id.* at 1057–58. Once on the ground, Plaintiff testified that one officer had his right arm, and another officer had his left arm. *Id.* at 1059. Plaintiff specifically stated that his arms were not underneath his torso and that instead "[m]y left hand was outside above my shoulders, but my other hand was on the side . . . [t]hey had my arms." *Id.* at 1062. He reiterated that two officers had "control" of his arms. *Id.* A third officer then slammed Plaintiff's head into the pavement three to four times even though Plaintiff was not struggling and was

already "apprehended." *Id.* at 1059. The officers then forcibly placed Plaintiff into the police car. *Id.* at 1059–60.

In the end, the officers' supervisor arrived and informed Plaintiff that he would give him a break. *Id.* at 1060. He was ultimately only cited for traffic infractions. *Id.* at 1061. Plaintiff suffered abrasions to the right side of his face, severe headaches, and an injured jaw and mouth as a result of the blows that slammed his head into the pavement. *Id.* at 1062–63.; ECF 47-5 (photos of partially healed abrasions).

III.   Video of the Incident

Because the officers' body camera and dash camera videos were not preserved, the only video of the incident is a cell phone recording taken by one of Plaintiff's neighbors. ECF 44-6, PgID. 1058; ECF 47-4 (cell phone video). The video is of poor quality, extremely blurry and pixelated, and recorded from what appears to be a significant distance though a window at night. ECF 47-4. The video also starts after all three officers are already grappling with Plaintiff on the ground. *Id.* at 0:01–0:08.

While blurry, the video clearly shows that Officer Reyes conducted two strikes to Plaintiff's back, and then four hard and aggressive strikes to Plaintiff's head that drove Plaintiff's face into the pavement. *Id.* at 0:15–0:22. There is also a faint shout of "hands behind your back" just before the blows. *Id.* at 0:10–0:14.

Officer Roux believes the video also shows that Plaintiff's arms were underneath his torso in the turtling position until around 0:21–0:22 when the officers managed to gain control of Plaintiffs arms and handcuff him. ECF 44-5, PgID 1020. The officers' expert agreed. *See generally* ECF 44-8.

8

But after viewing the video numerous times, the Court finds that the video is inconclusive at best as to the position of Plaintiff's arms. ECF 44-7 at 0:01–0:30. The deposition testimony of the two officers and of Plaintiff remains the best evidence about the positioning of Plaintiff's arms during the incident.[6]

## LEGAL STANDARD

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must identify specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met that burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

---

[6] As for the officers' expert report, the expert's opinion about what the video shows is improper because expertise is not needed to decide the factual issue of what the video depicts. Fed. R. Evid. 702(a). And the report did not rely on any of the deposition testimony, s*ee generally* ECF 44-8, which demonstrated two very different versions of events, *see generally* ECF 44-4; 44-5; 44-6. Given that the expert's report did not address Plaintiff's version of events, the report is useless in resolving the motion.

9

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted). But the Court must give "full weight to any facts objectively compelled by [] videotape." *Moser v. Etowah Police Dep't*, --- F.4th---, 2022 WL 619830, at *3 (6th Cir. 2022) (citation omitted).

## DISCUSSION

To establish a § 1983 claim, Plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived [him] of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citation omitted). Here, all three officers acted under the color of state law. Whether the officers deprived Plaintiff of his Fourth Amendment right to be free from excessive force is at issue.

For § 1983 claims, "[q]ualified immunity is an affirmative defense," *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citation omitted), that "'shield[s]' public officials from money-damages liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,'" *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Once a defendant asserts a qualified immunity defense, the "[p]laintiff bears the burden of showing that [a] defendant[] [is] not entitled to qualified immunity." *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). Under qualified immunity, the Court

10

must engage in a two-prong analysis and may ultimately decide which prong to analyze first. *Guertin v. State*, 912 F.3d 907, 932 (6th Cir. 2019) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

First, the Court must "view the facts in the light most favorable to [Plaintiff]" and "determine whether the officer committed a constitutional violation." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Burchet v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002)). Second, "if there is a constitutional violation, the [C]ourt must determine whether that constitutional right was clearly established at the time of the incident." *Id.* (citation omitted).

The Court will first deny Officer Reyes qualified immunity on the excessive force claim. After, the Court will grant qualified immunity to Officers Bush and Roux because neither was personally involved in the alleged excessive force.

I. Officer Reyes

For excessive force claims, "the question is whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The Court must look to the totality of the circumstances to determine reasonable use of force *Id.* at 396. And for that assessment, the Court weighs three factors: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.*

The test looks "only [to] the facts that were knowable to the defendant officer[]." *Reich v. City of Elizabethtown*, 945 F.3d 968, 979 (6th Cir. 2019) (quoting *White v. Pauly*, 137 S. Ct. 548, 550 (2017)). An officer who uses force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The Court will examine each factor in turn because Plaintiff has alleged that he was struck even though he had given himself up to the officers. *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 404–05 (6th Cir. 2009) (citation omitted); *see also Gambrel v. Knox Cnty.*, 25 F.4th 391, 403 (6th Cir. 2022) (citations omitted).

The first factor favors a finding of excessive force. Officer Reyes testified that the brass knuckles were recovered in a search of Plaintiff *after* the strikes occurred and Plaintiff was in handcuffs. ECF 44-4, PgID 961–62. And Officer Reyes testified that Plaintiff "did not speed up or try to evade us" and "did not try to get away or anything." *Id.* at 948. So when the strikes occurred, Officer Reyes suspected Plaintiff had driven an unregistered and uninsured vehicle and was intoxicated while driving. ECF 44-4, PgID 960, 979.

In general, "[c]onduct that is not a violent or serious crime does not permit an officer to use increased force absent other factors." *Vanderhoef v. Dixon*, 938 F.3d 271, 277 (6th Cir. 2019) (citation omitted). And the Sixth Circuit has held that traffic offenses "commonly fall within the lowest rung of unlawful activity" and therefore weigh in a plaintiff's favor under the severity of crime factor. *Id.* (citation omitted). Even operating a vehicle while intoxicated is not considered a severe offense under

12

the factor. *Laury v. Rodriguez*, 659 F. App'x 837, 843 (6th Cir. 2016) (citation omitted). Given that Officer Reyes suspected Plaintiff of having only committed traffic offenses and driving while intoxicated, and such illegal activity is not considered severe under Sixth Circuit precedent, the first *Graham* factor favors Plaintiff.

Whether the second factor supports Plaintiff or Officer Reyes depends on the outcome of a genuine dispute of material fact. The officers testified that Plaintiff's arms were in a turtling position from which he could have pulled a weapon or otherwise used force to attack them. ECF 44-4, PgID 949, 959; ECF 44-5, PgID 1013–14. If Plaintiff was in such a position without the officers having neutralized him, he may have posed an immediate threat to the officers' safety. But Plaintiff testified that when the strikes occurred the officers had control of his arms and he was already "apprehended." ECF 44-6, PgID 1059, 1062. If Plaintiff's testimony is believed and he had "give[n] [himself] up to th[e] officers so they [could] apprehend [him]," *id.* at 1063, then there was no immediate threat to the officers' safety because Plaintiff had been neutralized. *See Morrison*, 583 F.3d at 404 ("This Court has consistently held in light of the reasonableness standard that use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law.") (quotation marks and citation omitted); *see also Gambrel*, 25 F.4th at 403 (stating that "people who pose no safety risk to the police" have a right "to be free from gratuitous violence during arrest"). And the inconclusive cell phone video of the incident does not bolster either parties' recollection. ECF 44-7 at 0:01–0:30.

When analyzing the second factor at summary judgment, if there is a "genuine dispute of material fact," courts are "precluded . . . from finding that the defendants felt any justifiable threat to their safety." *Ruemenapp v. Oscoda Twp.*, 739 F. App'x 804, 811 (6th Cir. 2018). Here, there is a genuine dispute of material fact because a reasonable jury could find either that Plaintiff was in the turtling position or that the officers had full control of Plaintiff and that he had given himself up. *Anderson*, 477 U.S. at 248. Because the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party," the Court cannot decide the second factor in favor of Officer Reyes at the summary judgment stage of litigation. *60 Ivy St. Corp.*, 822 F.2d at 1435.

And whether the third *Graham* factor favors Plaintiff or Officer Reyes also depends on resolution of a genuine dispute of material fact. As discussed, the officers claimed that Plaintiff was in a turtling position and actively resisted putting his arms behind his back to be handcuffed. ECF 44-4, PgID 949, 959; ECF 44-5, PgID 1013–14. Active resistance would favor Officer Reyes. But Plaintiff claimed that he had his hands in the air before he was tackled and that while on the ground, he continued to give himself up to the police. ECF 44-6, PgID 1057–60, 1062–63. The video shows that, before the strikes, Plaintiff was squirming under the pressure of the three officers pushing down on him. ECF 44-7 at 0:01–0:30. But the poor quality of the video and distance from which the video was shot make determining the level of resistance an issue for the jury. *Id.* And as discussed above, the Court cannot

14

determine where Plaintiff's arms were positioned, let alone whether he was using them to resist arrest.

In the Sixth Circuit, "[i]t was well-established at the time of the incident in this case that a non-violent, *non-resisting, or only passively resisting* suspect who is not under arrest has a right to be free from an officer's use of force." *Smith v. City of Troy*, 874 F.3d 938, 945 (6th Cir. 2017) (per curiam) (emphasis added) (citation omitted). Here, given the conflicting testimony and unclear video, there is a genuine issue of material fact as to whether Plaintiff was actively resisting arrest because a reasonable jury could find for either Officer Reyes or Plaintiff on the issue. *Anderson*, 477 U.S. at 248. Because the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party," the Court cannot decide the third factor in favor of Officer Reyes at the summary judgment stage of the litigation. *60 Ivy St. Corp.*, 822 F.2d at 1435.

In total, the first *Graham* factor favors Plaintiff and there are genuine disputes of material fact as to the second and third factors. At the summary judgment stage of litigation, the Court cannot make credibility determinations—only a jury can. *Anderson*, 477 U.S. at 255. The Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party," and so the Court cannot decide either factor in favor of Officer Reyes at summary judgment. *60 Ivy St. Corp.*, 822 F.2d at 1435. The Court cannot grant Officer Reyes qualified immunity under the first prong because none of the three *Graham* factors can be found in his favor at the present stage of litigation.

15

Having determined that genuine disputes of material fact preclude the Court from granting qualified immunity under the first prong, the Court must now determine whether, even if Officer Reyes violated Plaintiff's Fourth Amendment right, that right was clearly established at the time of the alleged incident. *Barton*, 949 F.3d at 947 (citation omitted). A right is considered clearly established "when existing precedent has placed the statutory or constitutional question beyond debate" and "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 275–76 (6th Cir. 2020) (cleaned up). Here, the inquiry is simple: the Sixth Circuit recently held that as early as 2016 "our precedent had 'clearly establish[ed] the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest.'" *Gambrel*, 25 F.4th at 403 (alteration in original) (quoting *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 688 (6th Cir. 2006)). In *Gambrel*, the plaintiff was repeatedly struck by a police officer and did not fight back. *Id.* And the officer had the opportunity to handcuff the plaintiff while he was lying down but instead struck him. *Id.* The Sixth Circuit determined that *Shreve* constituted a "legal rule [] identified at a sufficiently 'specific' level of generality to qualify as clearly established law" given the facts of the case. *Id.* (citation omitted).

Here, if the jury believes Plaintiff's recollection of the incident, Plaintiff had his hands in the air and gave himself up to the police. ECF 44-6, PgID 1057–63. And while he was on the ground, the officers would have had enough time to place Plaintiff in handcuffs before the strikes because they controlled his arms. *Id.* at 1062. Because,

16

under *Gambrel*, the right to be free from gratuitous violence during arrest was clearly established by 2016, Plaintiff had a clearly established right to be free from the gratuitous strikes during his 2019 arrest. 25 F.4th at 403.

In all, Plaintiff may very well have been in a turtling position and actively resisting arrest, but based on the record before the Court, there is a genuine dispute of material fact as to whether that is the case. As a result, the Court cannot grant Officer Reyes qualified immunity because only a jury can decide the disputed factual issues.

II.     Officers Bush and Roux

To be liable under § 1983, a "defendant must be 'personally involved' in the unconstitutional action." *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 490 (6th Cir. 2020) (citation omitted). Having "[p]roximity to a wrongdoer does not authorize punishment." *Id.* (quotation and citation omitted). There must also be "proof of a causal connection between the defendant's unconstitutional action and the plaintiff's injury." *Id.* (citations omitted).

Here, the strikes to Plaintiff's head are the only actions specifically alleged in the amended complaint that constitute excessive force. *See generally* ECF 25. And in Plaintiff's response brief he argued that Officers Bush and Roux were part of the restraining process during which only Officer "Reyes used unnecessary strikes to the back of Plaintiff's head." ECF 47, PgID 1181–84. Officers Bush and Roux were not personally involved in the strikes; they only knelt next to Officer Reyes and Plaintiff when the blows occurred. *See Pineda*, 977 F.3d at 490.

A police officer can be held liable for failure "to act to prevent the use of excessive force . . . whe[n] (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008) (quotation marks and citations omitted). But Plaintiff did not point to any information in the record that suggests Officers Bush and Roux knew that Officer Reyes would strike Plaintiff's head. *See generally* ECF 47. And the strikes happened in such quick succession that neither officer would have had a reasonable opportunity to intervene. *See* ECF 44-7 at 0:01–0:30.

Put simply, Officers Bush and Roux were not personally involved in the strikes to Plaintiff's head and no evidence shows that they knew Officer Reyes would strike Plaintiff's head or that they had a reasonable opportunity to intervene. As a result, Officers Bush and Roux are entitled to qualified immunity because no constitutional violation occurred. The Court will therefore grant summary judgment to them.

## CONCLUSION

The only remaining claim in the matter is an excessive force claim against Officer Reyes. Because no claims remain against either Corporal Bush or Officer Roux, the Court will dismiss both officers. And because all that remains of the case is a jury trial on the factual issues discussed above, the Court will also order Plaintiff and Officer Reyes to engage in mediation before the Discovery Master that the Court appointed in late 2020. ECF 36. Mediation will benefit the present case because the parties cannot pursue an interlocutory appeal given that the denial of qualified

immunity did not turn on an "abstract or pure legal issue." *Gregory v. City of Louisville*, 444 F.3d 725, 743–44 (6th Cir. 2006). The mediation must take place before May 27, 2022.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion for summary judgment [44] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Corporal Bush and Officer Roux are **DISMISSED WITH PREJUDICE** from the case.

**IT IS FURTHER ORDERED** that the Court **REFERS** the case to Mr. Thomas Schehr for mediation and settlement discussions and **ORDERS** the parties to proceed in compliance with Local Rule 16.4. The mediation and settlement discussions must occur **no later than May 27, 2022**. The parties must contact Mr. Schehr and provide him with a copy of this order as soon as practicable and **NOTIFY** the Court of the date of the mediation session once it is scheduled.

**IT IS FURTHER ORDERED** that Mr. Schehr must **NOTIFY** the Court within seven days of completion of mediation, stating only the "date of completion, who participated, whether settlement was reached, and whether further [alternative dispute resolution] proceedings are contemplated." E.D. Mich. L.R. 16.4(e)(6). If a settlement is reached, the parties must **NOTIFY** the Court immediately upon completion of mediation and **SUBMIT** a proposed order of dismissal within twenty-one days. *Id.* at 16.4(e)(7). If a settlement is not reached, the parties must **NOTIFY** the Court within seven days of the completion of mediation.

**SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: March 31, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 31, 2022, by electronic and/or ordinary mail.

s/ David P. Parker  
Case Manager
